M. A. SMITH (Formerly Below John W. Sissons) as Liquidator of Bank of Titusville, v. E. A. MACBETH.

161 So. 721.
Division B.
Opinion Filed May 18, 1935.
Rehearing Denied June 14, 1935.

*Crofton & Wilson,* for Appellant;

*O. S. Thacker,* for Appellee.

TERRELL, J.—May 30, 1925, J. L. Easterlin and his wife, B. J. Easterlin, contracted to sell Wm. P. Pastorius certain lands in Brevard County, Florida. Pastorius put up a "binder" of $250.00 which, with the deed of conveyance by the Easterlins to him, was placed in the Bank of Titusville and Trust Company with the following letter of instruction, signed by all three parties:

"We hand you herewith deed from J. L. Easterlin and wife, B. J. Easterlin, and the sum of Two Hundred and Fifty ($250.00) Dollars cash, which deed and money you will please hold in escrow upon the following terms and conditions:

"The said J. L. Easterlin and wife will, as soon as possible, obtain an abstract to the property described in the deed, to-wit: Government Lot 2 of Section 5, Township 25 South of Range 38 East, containing 40 acres, more or less, and deliver the same to you for examination by counsel for William P. Pastorius, who shall within fifteen days after such delivery return the same with written opinion of his counsel either approving or disapproving the title shown by

the Abstract. In case such written opinion does not approve as a merchantable title the title of said J. L. Easterlin and wife, then and in that event the $250.00 cash shall be returned to William P. Pastorius and the deed returned to J. L. Easterlin. In case such opinion approves the title, you may deliver the deed herein to Mr. William P. Pastorius upon the payment of one-fourth of the purchase price of said property and the delivery of a first mortgage on said property properly executed and securing the balance of the purchase price, which is to be evidenced by promissory notes maturing one, two and three years after date of deed and drawing interest at the rate of 8 per cent. per annum, payable semi-annually.

"It is understood and agreed that the total purchase price is approximately Eighty-four Thousand ($84,000.00) Dollars or Thirty-two ($32.00) Dollars a front foot of ocean frontage, the exact frontage to be determined by survey of the land by the purchaser, William P. Pastorius, or the above figures accepted and considered correct.

"In case the opinion of counsel shall find that the title is merchantable as shown by said abstract and the said William P. Pastorius shall decline to consummate the purchase as herein provided then and in that event you are authorized to deliver both the deed and the cash sum of $250.00 to the said J. L. Easterlin, or in case said abstract is not returned within the said fifteen days the transaction shall be considered terminated and you are instructed to deliver both the money and deed to the said J. L. Easterlin."

Pastorius later contracted to sell the said lands to appellee, E. A. Macbeth, and on November 13, 1935, placed with the Bank of Titusville and Trust Company the sum of $21,000.00, paid him by Macbeth, with the following letter of instruction:

"I hand you herewith the sum of $21,000.00 to be held by you in escrow and paid over by you under the following terms and conditions, viz.:

"There is a deed that you now hold in escrow to Government Lot 2, of Section 5, Township 23, South of Range 38 East, containing 40 acres, more or less, executed by J. L. Easterlin and B. J. Easterlin, his wife, to Wm. L. Pastorius. This deed was executed on the 13th day of May, 1925, and placed with you in escrow with a contract of the same date directing its disposition.

"I do not intend by this letter or by any instructions hereunder to abrogate in any manner, form, or fashion, the agreement above referred to or the disposition of the deed under said agreement. It developed after placing the aforesaid deed with escrow that one Allen filed his *lis pendens* against the property conveyed in the deed and instituted suit for specific performance. This necessitated delay in carrying out the final consummation of the deal as outlined in the said escrow agreement.

"Hence, I am placing with you the sum of $21,000.00 as an evidence of my good faith and willingness to perform all functions by me to be performed as outlined in the escrow agreement.

"You will hold this $21,000.00 and turn it over to J. L. Easterlin and B. J. Easterlin, his wife, when the *lis pendens* with all attendant appeals will have been adjudicated in favor of J. L. Easterlin and his wife, B. J. Easterlin and when the records of the County of Brevard will have been purged of any and all liens against the said property conveyed in the deed held by you in escrow.

"However, in the event of an appeal by Allen or his counsel being taken to the Supreme Court of Florida from any finding in the case of Allen v. Easterlin, then in that

event you are empowered to deliver to J. L. Easterlin and B. J. Easterlin, his wife, the sum of $5,000.00 upon their producing to you a receipt for same, acknowledging the same to be a part of the cash payment on the purchase price of the said property; said receipt to acknowledge this escrow letter and be signed by J. L. Easterlin and B. J. Easterlin, his wife, before a Notary Public.

"You are hereby informed that the aforesaid property has been sold to E. A. Macbeth and that the said Macbeth is furnishing the money which is placed in escrow herewith, but you are instructed that you are not to deliver to the said Macbeth or anyone else the deed afore described unless the said Macbeth shall produce a receipt to you from me in full or my administrators for any and all sums due me under a contract between the said Macbeth and myself.

"I will mail you mortgage executed upon the property described in the deed aforesaid according to the terms of the escrow letter placed with the deed which you are to hold and deliver to J. L. Easterlin and B. J. Easterlin, his wife, upon the final consummation of the deal as outlined in the escrow letter."

Sometime prior to the proposed sale by Pastorius to Macbeth, one W. F. Allen brought a suit against the Easterlins for specific performance of a contract to sell the said lands to him and filed a *lis pendens* thereon. The Allen suit is referred to in the letter of instruction placed with the Bank by Pastorius, but is not of material importance insofar as it affects the issues in this case except as to the manner and date of its conclusion.

Macbeth in due course contracted to sell the said lands to other parties, the Allen suit was amicably settled and a final decree entered therein September 8, 1926, cancelling the contract of sale. The Bank, by consent of Macbeth, paid

$500.00 of the $21,000.00 to Easterlin, and Pastorius, by letter dated March 30, 1926, authorized the Bank to return to Macbeth the deposit of $21,000.00 or any part of it. Sixteen thousand dollars were returned to Macbeth in response to said letter which negatived any intent to abrogate or modify the terms of the letter of instruction signed by Easterlin and Pastorius, dated May 13, 1925, and quoted herein.

The Allen suit being terminated, it appears that Pastorius was advised that the title to said lands was clear except as to a small mortgage which was held by the Bank of Titusville and Trust Company and could be released at any time. This information is in part challenged. There is no showing, however, of an opinion from the attorney of Pastorius or Macbeth approving or disapproving the title, as contemplated by the letter of May 13, 1925.

On September 13, 1926, the Bank of Titusville and Trust Company paid to Easterlin and his wife the remaining $4,500.00 of the $21,000.00 placed with it by Pastorius November 13, 1925.

In August, 1929, the Bank disposed of its Trust Department and changed its name to the Bank of Titusville. In March, 1932, the Bank of Titusville closed and the appellant is now its liquidator.

This suit was instituted by Macbeth in November, 1930, seeking to recover from the liquidator the $4,500.00 paid by the Bank to the Easterlins on the theory that said fund was held by the Bank in trust as a preferred claim and that it was paid to the Easterlins without legal authority in that it was never revealed that the records of Brevard County were purged of any and all liens against the said lands as the letter of June 13, 1925, requires. The Chancellor on final hearing upheld this contention and ordered

said $4,500.00 returned to complainant from the funds in the hands of appellant as liquidator of the Bank. This appeal is from that final decree.

Eight questions are argued here by appellant, but all go to the sufficiency of the bill of complaint, the good faith of the parties, *laches,* and whether or not the funds sought to be recovered were traced into the hands of appellant.

The $21,000.00 placed in the Bank by Pastorius with the letter of November 13, 1925, was unquestionably a special deposit for a special purpose and was held in trust by the Bank. Our conclusion is that the $4,500.00 of this fund paid to the Easterlins was not disbursed by authority of Macbeth or Pastorius, nor as authorized in either letter as quoted herein, and that consequently Macbeth is entitled to have it returned to him from the assets of the Bank in the hands of the liquidator.

It is quite true that this suit was not brought for four years or more after this fund was paid to the Easterlins, in which time Pastorius and Easterlin had died, the Bank had changed its name, and had become insolvent, but all this time the Bank was on notice of the claim and both the claim and suit against the liquidator were filed within the one year required by the statute for filing such claims. The record conclusively shows that the assets of the Bank in the hands of the liquidator were enlarged by this amount.

It is not necessary to say more on the question of *laches.* All other questions raised are resolved by the interpretation of the alleged escrow agreement embraced in the two letters of instruction as here quoted.

Appellant contends that both letters of instruction constituted escrow agreements vesting rights in the $21,000.00 to Easterlin and that no part of it could be released without the consent of Easterlin.

We do not think this contention well grounded. The two letters as quoted herein refer to different transactions had six months between them, and while both had reference to the same parcel of land the parties to them were different, the terms of the two sales were different, and no consent of the parties is shown to bind them all by both. The letter of May 13 is nothing more than an option to purchase, while the letter of November 13 is merely an advisory instrument giving the source of the $21,000.00 and the disposition to be made of it in the event named contingencies arose. Easterlin acquired no rights whatever under the letter of November 15 except under the contingencies therein named which did not materialize, and Macbeth acquired none under the letter of May 13 for like reasons. Macbeth was in no way bound by the letter of May 13 and as to Pastorius it was a mere option. The fund deposited with the letter of November 13 was subject to withdrawal any time before it was disbursed as the letter directed and it could not be disbursed in any other manner.

Both these letters of instruction speak in terms of escrow, but neither has the vital elements of such an instrument. A mere delivery with instructions to be carried out does not make an escrow agreement. To constitute a binding escrow there must be an instrument embodying conditions mutually beneficial to both parties, agreed to by both parties, and it must be communicated to and deposited with a third party. It then becomes irrevocable by either party during the period it remains in escrow. The letters involved here nor either of them met this test.

A careful analysis of the pleadings and the evidence abundantly support the findings and decree of the Chancellor which must be and are hereby affirmed.

Affirmed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.