553 So.2d 202 (1989)
Barbara SHULTZ, Appellant,
v.
SUN BANK/NAPLES, N.A., Ronald G. Meyers, Herman Robandt, and Donna Robandt, and Meyers Enterprises, Inc., Appellees.
Charles O. FARRAR, Receiver, Appellant,
v.
SUN BANK/NAPLES, N.A., Ronald G. Meyers, Herman Robandt, and Donna Robandt, and Meyers Enterprises, Inc., Appellees.
Nos. 88-02666, 89-00005.
District Court of Appeal of Florida, Second District.
October 27, 1989.
Rehearing Denied December 8, 1989.
*203 Victoria M. Ho of Vega, Brown, Stanley & Martin, P.A., Naples, for appellant Barbara Shultz.
Cynthia Byrne and Mark V. Silverio, Miami, for appellant Charles O. Farrar, receiver.
Jeffrey D. Fridkin of Mershon, Sawyer, Johnston, Dunwody & Cole of Naples, for appellees Herman and Donna Robandt.
Lawrence A. Farese and Cathy S. Reiman of Cummings & Lockwood, Naples, for appellees Ronald G. Meyers and Meyers Enterprises, Inc.
PARKER, Judge.
In these consolidated appeals Barbara Shultz and Charles O. Farrar, in his capacity as a receiver, seek review of a final judgment entered in an interpleader action. We reverse the final judgment in part.
Sun Bank was the escrow agent for an account established to hold the funds tendered by subscribers pursuant to an offering of the limited partnership, Naples Bay Investors, Ltd. C. Phillip Elliott, the president of the general partner of this partnership, made the following deposits into the escrow account. On March 5, 1987, Elliott deposited on behalf of Humphrey and Albee a $200,000 check drawn on his personal account with Sun Bank. On March 10, 1987, Elliott deposited on behalf of Parrino a $100,000 check drawn on the account of Elliott Enterprises with Barnett Bank. On March 13, 1987, Elliott deposited on behalf of Albee two $50,000 checks, one check drawn on the account of Elliott Mortgage Company, Inc. and the other check drawn on the Elliott Enterprises account, both accounts with Barnett Bank. Finally, on March 30, 1987, Elliott made a deposit totaling $300,000 on behalf of Robandt, Shultz, and Meyers. This deposit was comprised of a check for $225,000 drawn on Elliott's personal account with Sun Bank and a $75,000 check made out to Naples Bay Investors, Ltd. on Ronald G. Meyers' account with Citizens and Southern National Bank.
The offering failed because there was an insufficient number of subscribers. Sun Bank commenced to return the escrowed funds to the subscribers and, in fact, returned Humphrey's, Albee's, Parrino's, and Meyers' full invested amounts. Sun Bank, for a time, believed that Albee was entitled to receive $200,000. When it had $200,000 in the escrow account, Sun Bank received the following conflicting claims to the funds. The Robandts and Shultz each claimed $100,000, and Meyers claimed the entire $200,000 in addition to the $100,000 refund Meyers had already received. Sun *204 Bank then filed this interpleader action. It was later learned that Albee was only entitled to receive $100,000; consequently, the escrow account had a balance of $300,000. Farrar, a receiver appointed by a federal court for Elliott and his businesses, intervened in the interpleader action to claim $100,000. A discussion of the bases of these conflicting claims follows.
In January 1987, the Robandts sent Elliott two checks for $50,000 each made out to Naples Bay Investment Corp. Elliott deposited both checks in an Elliott Enterprises account with Northern Trust Bank of Naples/Florida. On March 14, 1987, the Robandts signed a subscription agreement to purchase one investment unit of Naples Bay Investors, Ltd.
On March 20, 1987, Shultz provided Elliott with consideration of $100,000 consisting of the following: a cashier's check in the amount of $40,657.50; a personal check for $2,342.60 made payable to Phillip Elliott; stock valued at $17,000; and cancellation of a previous investment agreement worth $40,000. Elliott deposited both checks in an Elliott Enterprises account with Northern Trust Bank of Naples/Florida. On March 20, 1987, Shultz signed a subscription agreement for one unit of Naples Bay Investment Ltd.
Meyers' claim to $200,000 is not related to his investment with Naples Bay Investment Ltd. but instead is based on an independent business transaction with Elliott. Meyers and Elliott had been negotiating a $1,000,000 business deal for several months. Meyers earlier had invested $550,000 with Elliott in short-term loans which, at the time relevant to this action, had matured. These loans were to be rolled over into a new transaction. Meyers procured an additional $450,000 through a loan with Sun Bank of Lee County. The loan proceeds consisted of two cashier's checks in the amounts of $300,000 and $150,000 made payable to Meyers Enterprises, Inc. On March 27, 1987, Meyers delivered these checks to Elliott without any restrictive endorsement and without any written evidence which could be deemed to restrict or inhibit free negotiation of the checks or the use of their proceeds. Elliott deposited these checks in his personal account with Sun Bank. Meyers testified that he expected to receive a $1,000,000 second mortgage on the Elliott Financial Center and to be named an irrevocable beneficiary of an insurance policy on Elliott's life. Elliott, however, did not have the note or mortgage prepared when Meyers arrived at Elliott's office. Instead, Elliott attempted to persuade Meyers to take an interest in the Naples Bay Investors deal. Meyers was preparing to leave town, and the parties did not complete the transaction. Meyers testified that he instructed Elliott to hold the funds in escrow until Meyers' scheduled return in five days. On March 27, 1987, Elliott sent Meyers three unsecured promissory notes dated April 1, 1987, totaling $1,000,000 and bearing an eighteen percent interest rate. Meyers claims that he is entitled to $200,000 of the escrow account because the $450,000 that he gave Elliott was deposited in Elliott's personal account on March 27, 1987, which brought that account's balance to $480,559.55, and then on March 30, 1987, $300,000 was taken from the personal account and deposited into the escrow account. Meyers reasons that the funds in the escrow account were his funds which Elliott misappropriated.
The Securities and Exchange Commission filed a complaint against Elliott, and on March 31, 1987, a federal court entered a permanent injunction which effectively shut down Elliott's businesses. Further, the federal court appointed Farrar to be the receiver to take control of all of Elliott's assets.
Farrar's claim to $100,000 in the escrow account is based upon the theory that Elliott mistakenly overpaid the escrow account $100,000 from Elliott's personal funds. As detailed above, Elliott designated deposits of $100,000 made on both March 5, 1987, and March 13, 1987, as being made on behalf of Albee who had invested only $100,000. Elliott later wrote to Sun bank and advised that the March 13th deposit should have been made on behalf of the Robandts. Albee also renounced any interest in the March 13th *205 deposit. Consequently, Farrar argues that the $300,000 deposit made on March 30, 1987, consisted of a $100,000 deposit on behalf of Shultz, a $100,000 deposit on behalf of Meyers (which was refunded to him prior to the institution of this action), and a $100,000 overpayment to the account from Elliott's personal funds.
The trial court entered a final judgment in which it found that the Robandts and Meyers were entitled to $100,000 and $200,000 of the escrowed funds, respectively. None of the parties contest that the Robandts are entitled to the return of their $100,000. We agree and affirm the final judgment in that respect. We find, however, that the trial court erred in awarding $200,000 to Meyers, which we hold should have gone equally to Shultz and Farrar.
The evidence is uncontroverted that the Robandts, Shultz, Meyers, and three other persons entrusted Elliott with $100,000 each as consideration for one investment unit in Naples Bay Investors, Ltd. In all of the transactions, Elliott initially deposited the consideration into accounts other than the escrow account established for Naples Bay Investors, Ltd. Elliott then deposited $100,000 for each investor into the escrow account from commingled funds contained in various other personal and business accounts of Elliott. The escrow agent returned the funds to all of the subscribers except the Robandts and Shultz. The trial court's judgment would return the Robandts' funds to them but would deny return of Shultz's funds to her. We find no justification for this inequitable treatment and hold that Shultz is entitled to the return of her funds.
The trial judge erred in finding that Meyers delivered the $450,000 to Elliott in escrow. An escrow agreement must be in writing, and the funds must be delivered to a third party. Smith v. MacBeth, 119 Fla. 796, 161 So. 721 (1935). The evidence is uncontroverted that there was no written instrument evidencing the purported escrow agreement and that Meyers delivered the checks directly to Elliott. Accordingly, there is no substantial, competent evidence to support the trial judge's finding that Meyers delivered the funds to Elliott in escrow. This unsupported finding formed the basis of the trial judge's conclusion to establish a constructive trust over the funds deposited on March 30, 1987, in favor of Meyers. On appeal, Meyers concedes that an escrow arrangement may not have been established but that the trial court was correct in establishing a constructive trust in favor of Meyers because Elliott breached a trust relationship with Meyers. A constructive trust, however, is an equitable remedy to achieve justice and to prevent unjust enrichment. Bell v. Smith, 159 Fla. 817, 32 So.2d 829 (1947). Meyers delivered to Elliott cashier's checks with no written restrictions whatsoever. When one of several innocent persons must suffer for the wrongful act of a third person, the loss will be endured by the person who by reasonable diligence could have protected himself. Parsley Bros. Constr. Co. v. Humphrey, 136 So.2d 257 (Fla. 2d DCA 1962). In this case, Meyers should not be given any preference over Elliott's other creditors as it pertains to the $450,000 unsecured loan. Thus, the remaining $100,000 in the escrow account should be awarded to Farrar for the benefit of Elliott's creditors.
We, therefore, reverse the trial court's order in part and remand, directing the trial court to distribute the funds filed in the interpleader action in the amount of $100,000 to the Robandts, with interest actually earned from March 13, 1987, and $100,000 each to Shultz and Farrar, with interest actually earned from March 30, 1987.
Reversed and remanded.
CAMPBELL, C.J., and THREADGILL, J., concur.