Don R. DICKERSON, Steven G. Lester,
and John D. Looper, Appellants,

v.

CENTRAL FLORIDA RADIATION ON-
COLOGY GROUP d/b/a Florida Med-
ical Physics Associates, Appellees.

No. 97–928–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

Sept. 23, 1998.

James E. Foster, Akerman, Senterfitt & Eidson, P.A., Orlando, FL, for Don R. Dickerson, Steven G. Lester and John D. Looper.

Jeffry R. Jontz, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Orlando, FL, for Central Florida Radiation Oncology Group.

Lynnea S. Concannon, L.S. Concannon, P.A., Orlando, FL, for Gene T. Chambers.

## ORDER

SHARP, District Judge.

Don R. Dickerson, Steven G. Lester, and John D. Looper ("DLL" or "appellants") bring this instant action against Central Florida Radiation Oncology Group ("CFROG" or "appellee") seeking a reversal of an order entered by the United States Bankruptcy Court for the Middle District of Florida holding that the funds in a segregated interest bearing account were property of the bankruptcy estate and denying DLL's Motion for Relief from the Stay. Appellee has responded in opposition to DLL's present appeal. Following a review of the case file and relevant law, the court concludes that the bankruptcy court was in error in determining that the account was property of the estate, and accordingly, grants DLL's present appeal and relief from the bankruptcy stay.

### I. Statement of the Facts

Because the court finds that the bankruptcy court's findings of fact in the order dated November 15, 1996 accurately reflect the facts of record, and because neither party disputes the facts as stated, the court adopts the factual findings made below. This appeal is properly before the court pursuant to 28 U.S.C. § 158(a)(1).

### II. Legal Discussion

*A. Standard of Appellate Review*

When sitting in its appellate capacity, a district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." 11 U.S.C. Bankr.R. 8013 (West 1997). The district court is bound by the findings of fact made by the bankruptcy court unless it determines them clearly erroneous. The burden is on the appellant to show that the bankruptcy court's factual findings are clearly erroneous. *See Gibson Group, Ltd. of Pinellas County, Inc. v. Cooper (In re Cooper)*, 197 B.R. 698, 699 (M.D.Fla.1996). Appellant is entitled to an independent, *de novo* review of the bankruptcy court's legal conclusions. *See State Farm Mut. Auto. Ins. Co. v. Fielder (In re Fielder)*, 799 F.2d 656, 657 (11th Cir.1986) (per curiam). Consequently, a district court will

not disturb a ruling of the bankruptcy court "unless its factual findings are clearly erroneous or it applies the incorrect legal standard." *Cox v. Lansdowne (In re Cox),* 904 F.2d 1399, 1401 (9th Cir.1990); *accord In re Fielder,* 799 F.2d at 657.

### B. The Merits of Appellants' Appeal

Appellants raise two issues in this appeal. First, they contend that the bankruptcy court committed reversible error when it determined that the segregated interest bearing account established in the settlement agreement was not an escrow account. Second, appellants urge reversal of the bankruptcy court's conclusion that the funds held in the segregated account were property of the bankruptcy estate. The court will address each issue in its respective order.

### 1) Nature of the Account

■ Appellee argues that the bankruptcy court's conclusion that the segregated account was not an escrow account is a finding of fact and therefore should be reviewed under a clearly erroneous standard. However, the bankruptcy court stated in the order that its determination that no escrow account was created was a conclusion of law. Furthermore, at the hearings held before the bankruptcy court, the parties agreed that there were no factual disputes and that the judge could decide the case based on the four documents in evidence. (Doc. 39, T. 29). The bankruptcy court's conclusion that no escrow account was created is legal conclusion based on its interpretation of the settlement agreement, the temporary injunction order and the arbitration award. Therefore, this court must review the decision de novo.

■ Under Florida law, an escrow is established by "an instrument embodying conditions mutually beneficial to both parties, agreed to by both parties, and it must be communicated to and deposited with a third party." *Smith v. Macbeth,* 119 Fla. 796, 161 So. 721, 724 (1935); *Gibson v. Resolution Trust Corporation,* 51 F.3d 1016, 1021 (11th Cir.1995). Because all of the elements of an escrow are present and the record shows that the parties clearly intended to create an escrow account, this court finds that the

bankruptcy court erred when it concluded that an escrow account was not established.

■ The instrument that created the escrow account was the settlement agreement. The settlement agreement states that "[a]n interest bearing escrow account will be established requiring the joint signatures of James E. Foster and Charles V. Choyce." (Doc. 20A, Ex. 4, ¶ 26). The use of the word "escrow" throughout the agreement, although not determinative, is persuasive evidence of the parties intent. The agreement is also signed by both parties.

The settlement agreement contains conditions that are mutually beneficial to both DLL and CFROG. The agreement resolves many of the disputes between the parties and provides a mechanism for deciding the remaining claims. The creation of the escrow account along with the method for determining the compensation due to DLL settles many of the issues that the parties had been litigating before the Orange County Circuit Court.

■ The disposition of the property in the escrow account must be conditioned on the happening of some event. *See Gibson,* 51 F.3d at 1022 n. 7. The settlement agreement provides that funds would be disbursed to DLL when the parties agreed upon the proper accounting or if they were unable to agree, the amount would be determined through binding arbitration. *See id.* at ¶ 25. Therefore, the condition precedent to the transfer of funds was the determination of the amount due to DLL through either the agreement of the parties' accountants or a decision by an arbitrator.

■ To be a valid escrow, the written instrument must be deposited with a third party who agrees to act as an escrow agent. *See FDIC v. Knostman,* 966 F.2d 1133, 1140 (7th Cir.1992). Per the settlement agreement, the funds were delivered to James E. Foster and Charles V. Choyce, attorneys for DLL and CFROG respectively, who in turn deposited the funds in an account with First Union National Bank. Messrs. Foster and Choyce are proper intermediaries because neither was a party to the settlement agree-

ment and they accepted the funds as trustees.

In its November 15, 1996 order, the bankruptcy court stated that the account was not an escrow account and the funds were property of the estate because the funds "were not sufficiently insulated to put the world on notice that the monies were being held in escrow on account of the DLL." (Doc. 28, Order at 5). However, the funds were in a segregated account where they could not be commingled with CFROG's other funds. Appellee could not unilaterally withdraw funds and disbursements required the joint signatures of Messrs. Foster and Choyce. There was no evidence that appellee treated the account as part of CFROG's general operating funds. Therefore, the funds were sufficiently insulated to put the world on notice that they were being held in escrow on behalf of DLL.

The parties' intent to create an escrow account is further evidenced by the fact that neither party contested the nature of the account at any of the hearings held before the bankruptcy court. Both parties premised their arguments in the bankruptcy court on the assumption that the account established in the settlement agreement was an escrow account. Therefore, because all the elements of an escrow account are present and there is no evidence that the parties intended to create anything other than an escrow account, the court finds that the account created by the settlement agreement was an escrow account.

### 2) Property of the Estate

Appellants argue that the funds in the escrow account are not property of the bankruptcy estate because appellee did not have legal title to the funds and the condition precedent to the disbursement of the funds had been satisfied before the filing of the bankruptcy petition. Section 541(a) of the Bankruptcy Code provides that the debtor's estate is comprised of "all legal and equitable interests of debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Although bankruptcy law defines what property interests are part of the bankruptcy estate, state law determines whether the debtor has an equitable or legal interest in the property at the time of the bankruptcy filing. *See In re Hallmark Builders, Inc.,* 205 B.R. 971, 973 (Bankr.M.D.Fla.1996).

Under Florida law, legal title to property placed in an escrow account remains with the grantor until the occurrence of the condition specified in the escrow agreement. *See In the Matter of Berkley Multi–Units, Inc.,* 69 B.R. 638, 641 (Bankr. M.D.Fla.1987). Appellants argue, however, that appellee did not hold legal title to the funds in the account because it never had a legal right to the return of any funds or the right to back out of the transaction. Appellee cites *In the Matter of Berkley Multi–Units, Inc.,* 69 B.R. 638 (Bankr.M.D.Fla. 1987) for the proposition that the trustee is entitled to the funds because appellee always had legal title to the funds and the condition precedent to the disbursement of the funds never occurred. However, based on the language of the settlement agreement, it appears that CFROG would not receive any funds until the amount due to DLL was paid. (Doc. 20A, Ex. 4 ¶ 26(b)). Furthermore, there is no evidence that appellee could dissolve the agreement and recover the escrowed funds. *See In the Matter of Berkley Multi–Units, Inc.,* 69 B.R. at 642 (holding that debtor was entitled to the funds because it had the right not to proceed with the transaction and recover the funds). Therefore, appellee held a contingent remainder interest with respect to any funds remaining after the terms of the settlement agreement were satisfied.

Even though appellee only possessed a contingent remainder interest in the funds, it is contending that the trustee has a right to all the funds in the account as property of the estate before the amount owed to DLL is paid. Therefore, appellee is claiming a greater interest in the funds then it possessed prepetition. The bankruptcy estate, however, "succeeds to only such title and rights in the property as the debtor had at the time the petition was filed." *In re AGSY, Inc.,* 120 B.R. 313, 318 (Bankr. S.D.N.Y.1990) (quoting *In re N.S. Garrott & Sons,* 772 F.2d 462, 467 (8th Cir.1985)). When appellee filed its petition, the bank-

ruptcy estate received a contingent remainder interest that would not vest until all prior claims in the fund were paid and a surplus remained to which it was entitled. *See In re Palm Beach Heights Development & Sales Corp.*, 52 B.R. 181, 183 (Bankr.S.D.Fla.1985) (holding that the debtor's interest in the escrowed funds was not fully matured and therefore the estate would not receive any of the funds until all prior claims had been settled). Therefore, the bankruptcy court erred when it concluded that all funds in the escrow account were property of the estate.

 Assuming arguendo that appellee possessed legal title to the funds in the escrow account, the escrow account still would not be property of the estate because the condition precedent to the disbursement of the funds had been satisfied before the filing of the petition. Upon the occurrence of the condition in the escrow agreement, appellee's interest would terminate and the title to the account would be transferred to appellants. *See In re Missionary Baptist Foundation of America*, 792 F.2d 502, 506 (5th Cir.1986). The condition in the settlement agreement that would trigger the disbursement of the funds was the determination of the amounts due to DLL. (Doc. 20A, Ex. 4 ¶ 26a). The agreement provides that the parties' accountants would decide how much is owed to DLL and if they were unable to agree, the issue would be submitted to non-binding mediation and then binding arbitration. *See id.* Both parties agreed to this method of calculation. Appellee argues that there was no final determination of the proper amount because there was a motion for rehearing or modification before the Orange County Circuit Court when the bankruptcy petition was filed. However, the agreement does not state that the funds would be disbursed upon a final judgement in state court. While the Circuit Court retained jurisdiction to modify the arbitrator's award, the agreement clearly provides that the funds would be disbursed when the amount due was resolved in arbitration. On May 2, 1996, the arbitrator entered an award of approximately $400,000 in favor of appellants. Therefore, the condition occurred and the funds should have been disbursed to appellants. *See In re Arrow Mill Development Corp.*, 185 B.R. 190, 195 (Bankr.D.N.J.1995) (holding that the decision of the arbitrator extinguished the contingent interest of the debtor and therefore the escrow funds were not property of the estate). Furthermore, the award was affirmed in a final judgment entered by the Circuit Court on August 28, 1996, before appellee filed for bankruptcy.

In *In re Hallmark Builders, Inc.*, 205 B.R. 971 (Bankr.M.D.Fla.1996), Judge Briskman held that where "[a]rbitration was properly commenced under the terms of the arbitration clause in the contract, this results in an outcome determinative as to all contractual rights and liabilities." *Id.* at 974. The bankruptcy court gave collateral estoppel effect to the arbitrator's award because the "contract provided for arbitration, the parties had full and fair opportunity to litigate this issue, and the arbitration procedure adequately protected the rights of the parties." *Id.* Therefore, because the settlement agreement provided for disbursement of funds upon the determination of the amount due in arbitration and because the decision of the arbitrator should be treated as conclusive, this court finds that the condition precedent had been fulfilled and appellee lost any interest in the funds awarded to DLL by the arbitrator.

Appellant argues that if the state court judgment satisfied the condition in the agreement, any disbursement of the funds would be an avoidable transfer within ninety days of the bankruptcy petition. This argument fails because no transfer took place and even if it had, as discussed above, the funds were not property of the estate when the petition was filed. Furthermore, if a transfer is made pre-bankruptcy, the relevant transfer for preference purposes is the transfer of the funds into the escrow account and not the disbursement by the escrow agent, at least as long as the condition triggering the conveyance occurred prepetition. *See In re Newcomb*, 744 F.2d 621, 625 (8th Cir.1984).

### III. Conclusion

For all the reasons set forth above, the court concludes that the bankruptcy court erred when it determined that the segregated account was not an escrow account and the funds in the account were property of the

bankruptcy estate. Accordingly, the court **REVERSES** the bankruptcy court's November 15, 1996 order and directs the trustee of the bankruptcy estate to surrender the funds in the escrow account to appellants as determined by the arbitrator and affirmed in the Orange County Circuit Court. Furthermore, the court grants stay relief in Orange County Circuit Court case number CI94–8459 Division 37 in order to conclude the dispute over the arbitrator's award.