POLSTON, J.
 

 Petitioner Vannessa Van Vorgue seeks review of the decision of the Third District Court of Appeal in
 
 Rankin v. Van Vorgue,
 
 994 So.2d 463 (Fla. 3d DCA 2008), that reversed a trial court’s order denying release of funds held in escrow and remanded with instructions to allow disbursement to respondent Mara Rankin of fifty percent of the funds held in escrow from the sale of their Miami Beach home.
 
 [1]
 
 We agree with Van Vorgue that the trial court erred by applying injunctive principles of law to the escrow funds, which were required under an escrow agreement to be held until the parties’ disputes were resolved. Therefore, we quash the Third District’s decision.
 

 I. BACKGROUND
 

 Mara Rankin and Vannessa Van Vorgue formed a corporation, Van Vorgue Enterprises, holding equal amounts of stock, and purchased a Miami Beach home, holding title as joint tenants.
 
 Rankin,
 
 994 So.2d at 464. In 2004, Rankin was transferred to California, and subsequently Rankin and Van Vorgue entered into a contract for sale of their Miami Beach home to a third party.
 
 Id.
 
 Sometime later, Van Vor-gue signed two instruments: (1) a quitclaim deed of the Miami Beach home, giving title to Rankin; and (2) an assignment of stock in Van Vorgue Enterprises, transferring her interest to Rankin.
 
 Id.
 

 Before closing on the house sale, Van Vorgue sued Rankin on eight counts, claiming that, among other things, the
 
 *850
 
 quitclaim deed was not properly witnessed and she was fraudulently induced into signing both instruments.
 
 [2]
 

 Id.
 
 In order for the home sale to proceed, Van Vorgue signed a warranty deed on the home, and she and Rankin executed an escrow agreement providing that the proceeds from the home sale would be held for a period of three weeks, during which time the parties would endeavor to reach an agreement regarding disbursement of the funds.
 

 The escrow agreement, in pertinent part, reads as follows:
 

 1. The closing of the above transaction [home sale] was scheduled to occur on August 17, 2004. A title defect arose due to the filing of a Notice of Lis Pendens by Vannessa Van Vorgue, filed in Case No. 2004-17520 (CA 10), filed in the Circuit Court of the 11th Judicial Circuit, in and for Miami-Dade County, Florida.
 
 The claim of Vannessa Van Vorgue includes a request for cancellation of a (disputed) Quit Claim Deed filed of record whereby Vannessa Van Vorgue appears to have released her interest in the property to Rankin, said Deed having been recorded ... and a claim to her portion of the proceeds from the sale of the property as a co-omier.
 
 This agreement shall also not constitute a waiver by either Vannessa Van Vorgue or Mara M. Rankin of their respective rights or claims to either seek cancellation of the disputed Quit Claim Deed or to seek enforcement of the same.
 

 2. In order to clear title and allow the closing transaction to be completed, the parties have agreed as follows:
 

 A. After closing the total Sellers proceeds in the amount of $753,232.12 (herein “Escrow Deposit” or “Deposit”) are
 
 to be placed in Escrow with Chicago Title Insurance Company, who shall hold the funds for a period of approximately three (3) weeks,
 
 until September 10, 2004. The parties shall endeavor to reach an agreement as to the disbursement of said funds within said three (3) week period.
 

 B. Upon written authorization and instruction to disburse, signed, witnessed (by two witnesses) and notarized by Vannessa Van Vorgue, and her counsel, and Mara M. Rankin, and her counsel, or upon receipt of a Court Order instructing and authorizing Escrow Agent to' disburse the funds, Escrow Agent shall disburse the funds in accordance with said written authorization or Court Order, provided however that notice of such Order shall be delivered to all parties to the escrow, and their counsel, in writing, by facsimile and by U.S. Certified Mail, return receipt requested; and only after the time to file a motion for rehearing and to file a notice of appeal to such Order (and if an appeal is filed then the expiration of the time to file a motion for rehearing and to file a notice of appeal to such appeal) have all expired.
 

 C.
 
 In the event no Court Order or written authorization and instruction to disburse is received by Escrow Agent within three (3) weeks, to ioit: on or-before September 10, 2001/., Escrow Agent is hereby authorized to immediately place the funds in the Registry of the Clerk of the Court for Miami-Dade County,
 
 Florida, pursuant to Case No.
 
 *851
 
 2004-17520 (CA 10). The Sellers understand and acknowledge that they will be completely responsible for any and all attorney’s fees, costs or expenses reasonably incurred by Escrow Agent related to having to place the funds in the Registry of the Court.
 

 (Emphasis added.)
 

 The parties’ escrow agreement also “re-quirted] the proceeds from the sale to remain in escrow until the claims of the suit were resolved.”
 
 Rankin,
 
 994 So.2d at 464.
 
 [3]
 
 When, after several weeks, no determination had been made for disbursing the funds, Rankin filed a motion to transfer the escrow funds into an interest-bearing account instead of into the registry of the clerk of the court.
 
 [4]
 
 The trial court granted this motion, stating in its order that the escrow agent was “authorized (1)
 
 to continue holding the proceeds from the sale of the real property ... pending the resolution of the claims between the
 
 parties,
 
 [5]
 
 and (2) to deposit said proceeds in an interest-bearing account at a financial institution located in Miami-Dade County.” (Emphasis added.) The order further mandated that “[t]he funds held in said interest bearing account shall not be disbursed, pledged, borrowed against, or otherwise removed from said account except pursuant to the written authorization of the parties, or pursuant to further Order of this Court.” The provisions of the trial court’s order requiring the funds to be held by the escrow agent until resolution of the claims between the parties are consistent with the terms of the escrow agreement. Pursuant to the order, the escrow funds were transferred into an interest-bearing account.
 

 After two years passed, “Rankin filed a motion to release half of the escrowed funds, as well as a motion for partial summary judgment, seeking to enforce the instruments conveying interest in the property and assets” to her.
 
 Rankin,
 
 994 So.2d at 464. The trial eourt denied both motions, and Rankin appealed to the Third District.
 
 Id.
 

 The Third District dismissed as premature Rankin’s appeal of the trial court’s denial of her motion for partial summary judgment, but reversed the trial court’s denial of Rankin’s motion to release fifty percent of the proceeds in escrow.
 
 Id.
 
 at 464-65. The Third District held that “[t]o order retention of 100% of the escrowed money until the parties resolve the other claims would be, essentially, an improper injunction.”
 
 Id.
 
 at 465 (citing
 
 Konover Realty Assocs. v. Mladen,
 
 511 So.2d 705, 706 (Fla. 3d DCA 1987);
 
 Pianeta Miami, Inc. v. Lieberman,
 
 949 So.2d 215 (Fla. 3d DCA 2006);
 
 Rosasco v. Rosasco,
 
 641 So.2d 493 (Fla. 1st DCA 1994)). Accordingly, the Third District reversed the order denying Rankin’s motion for release of the sale proceeds and “remand[ed] to the trial court to allow disbursement to Rankin of fifty percent of the funds held in escrow
 
 *852
 
 from the sale of the Miami Beach home.”
 
 Id.
 

 II. ANALYSIS
 

 Because the funds are being held until the parties’ claims are resolved, pursuant to the terms of an escrow agreement, the Third District’s treatment of the trial court’s order denying the release of funds as an improper injunction is incorrect. As discussed below, the cases relied on by the Third District are not analogous to
 
 Rankin
 
 and therefore do not support its decision to reverse the trial court’s order.
 

 First, the Third District relied on
 
 Kon-over,
 
 511 So.2d at 706, in which the trial court ordered the defendants “to deposit $500,000 in the court registry pending the outcome of the case.” No escrow fund had been established at any point by the parties in
 
 Konover. See Konover,
 
 511 So.2d at 706 n. 1. The Third District reviewed this order “as one granting an injunction” and reversed.
 
 Id.
 
 at 706. The Third District in
 
 Konover
 
 relied on the following principle:
 

 It is entirely settled by a long and unbroken line of Florida cases that in an action at law for money damages, there is simply no judicial authority for an order requiring the deposit of the amount in controversy into the registry of the court or indeed for any restraint upon the use of a defendant’s
 
 unrestricted,
 
 assets prior to the entry of judgment.
 

 Id.
 
 (emphasis added) (citations omitted).
 

 The Third District also relied on
 
 Rosas-co,
 
 641 So.2d 493, in which the First District Court of Appeal held that the trial court lacked proper authority to order the husband in a divorce proceeding to deposit proceeds from a land sale into an escrow account pending the determination of attorneys’ fees he owed his wife. The First District called this nonfinal order “in the nature of an injunction” because it “required the Husband to accomplish the affirmative act of placing certain funds in an escrow account and thereby lose control and use of the funds pending the resolution of this litigation.”
 
 Rosasco,
 
 641 So.2d at 494-95.
 

 Finally, the Third District cited
 
 Pianeta Miami,
 
 949 So.2d 215, which involved various claims and counterclaims between Pi-aneta Miami, Inc. and the Liebermans. During the litigation, the trial court granted the Liebermans’ motion to order Piane-ta Miami “to deposit $500,000 from the proceeds of the upcoming sale of the hotel into an escrow account.”
 
 Pianeta,
 
 949 So.2d at 216. After a final judgment was entered for the Liebermans, but while further litigation was pending, Pianeta filed a motion to release the funds in escrow in excess of the judgment amount.
 
 Id.
 
 at 217. The trial court denied the motion, and on appeal, the Third District reviewed this order “as one granting an injunction.”
 
 Id.
 
 The Third District stated that “an injunction cannot be used to restrain the use of a party’s unrestricted assets prior to the conclusion of an action at law.”
 
 Id.
 
 (citing
 
 Konover,
 
 511 So.2d at 706;
 
 Leight v. Berkman,
 
 483 So.2d 476, 477 (Fla. 3d DCA 1986);
 
 Supreme Serv. Station Corp. v. Telecredit Serv. Ctr., Inc.,
 
 424 So.2d 844, 844 (Fla. 3d DCA 1982)). Because “the non-final order effectively restrains the use of Pianeta’s
 
 unrestricted
 
 assets, the funds in escrow ... in excess of the new final judgment, plus prejudgment interest, ... [are] being used to improperly secure the collection of a greater award of money damages in the future.”
 
 Id.
 
 at 217-18. Accordingly, the Third District reversed, holding that the trial court “unjustifiably denied the release of Pianeta’s unrestricted assets” from court-ordered escrow.
 
 Id.
 
 at 218.
 

 In contrast, the trial court’s order denying the release of funds in
 
 Rankin
 
 was not
 
 *853
 
 in the nature of an injunction because it did not restrict previously unrestricted funds. Here, unlike in the three cases relied on by the Third District, the funds were
 
 restricted
 
 funds, already being held in escrow by a third party by agreement of the parties.
 
 See Black’s Law Dictionary
 
 624 (9th ed.2009) (defining “escrow” as “[a] legal document or property delivered by a promisor to a third party to be held by the third party for a given amount of time or until the occurrence of a condition, at which time the third party is to hand over the document or property to the promisee”);
 
 Smith v. Macbeth,
 
 119 Fla. 796, 161 So. 721, 724 (1985) (“To constitute a binding escrow, there must be an instrument embodying conditions mutually beneficial to both parties, agreed to by both parties, and it must be communicated to and deposited with a third party.”).
 

 Because the disputed funds were held pursuant to the terms of an escrow agreement created to facilitate a sale and protect the parties’ interests by holding the funds while disputes were pending, the Third District erred by relying on injunc-tive principles of law that apply when there are no such escrow agreements. Accordingly, we agree with Van Vorgue that the Third District erred by reversing the trial court’s order denying the motion to release the escrow funds. Therefore, we quash the Third District’s decision.
 

 It is so ordered.
 

 QUINCE, C.J., and PARIENTE, LEWIS, CANADY, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution.
 

 [2]
 

 . Van Vorgue made several specific claims: accounting and dissolution of corporate partnership; establishment of equitable lien on the house sale proceeds; cancellation of quitclaim deed and corporate transfer documents; fraud in the inducement; fraudulent misrepresentation; partition; restitution; and accounting, receivership, and dissolution of corporation.
 
 Rankin,
 
 994 So.2d at 464 n. 1.
 

 [3]
 

 . The escrow agreement states that the escrow agent, "[Chicago Title Insurance Company,] shall have no authority to release any of the escrowed deposit if there exists any dispute or claim of dispute between the parties to this escrow, not withstanding counsel’s opinion."
 

 [4]
 

 . In her motion, Rankin stated, "It is in the parties' interests that the Escrow Agent continue to hold the funds and to place same in an interest bearing account for the benefit of the parties.” Rankin also asserted that "[n]o prejudice will result to either party from the granting of this Motion.”
 

 [5]
 

 5.The "claims” were not then defined by the trial court but were described in the escrow agreement as Van Vorgue's claims to cancel the quitclaim deed and for her portion of the home sale proceeds. Van Vorgue subsequently filed an amended complaint asserting various new causes of action.