COHEN, C.J.
Clare Greenshields ("Former Wife") appeals two orders: the first discharged a lis pendens on property she owned but imposed a restriction on the proceeds of its sale, and the second denied her request to dissolve an injunction, or alternatively, to require Mark Greenshields ("Former Husband") to post a bond. We reverse the requirement of both orders enjoining Former *989 Wife's use of proceeds from the sale of property.
The parties, who had three children together, divorced in 2011 while living in Merritt Island. After the divorce, Former Wife bought a house in Merritt Island, and Former Husband relocated to Orlando. In an attempt to bring the children closer to Former Husband, Former Wife agreed to relocate, and Former Husband agreed to loan Former Wife the money to purchase a house in Orlando. It is undisputed that in 2013, Former Husband loaned Former Wife $152,837.33 in principal for the purchase of the Orlando house. However, Former Wife retained ownership of her Merritt Island house. As part of the loan agreement, Former Wife gave Former Husband a power of attorney that provided:
My Attorney-in-Fact shall have full power and authority to act on my behalf. This power and authority shall authorize my agent to manage and conduct all of my affairs and to exercise all of my legal rights and powers. My agent's powers shall include, but not be limited to, the following:
....
To deal with any interest I may have in the real property at 912 Harbor Pines Drive, Merritt Island, Florida 32952 .... These powers include, but are not limited to, the ability ...:
....
iii. to direct or cause to direct on a first priority basis the proceeds of the sale of the property at 912 Harbor Pines in full repayment of all and any advances including interest, insurance, utilities or other charges incurred either with the ... loan for the purchase of 1333 Falling Star Orlando or the existing property at 912 Harbor Pines to ensure that Mark Greenshields is made completely whole and to act to direct any remaining funds after full repayment to Mark Greenshields to the bank account of my choice.
....
My Attorney-in-Fact will receive no compensation except for the reimbursement of all out-of-pocket expenses associated with the carrying out of my wishes in addition to 100% of the costs of loaning me the money to purchase my new property at 1333 Falling Star, Orlando, Florida, including interest paid by him on this loan and any other costs directly associated with it as well as any expenses incurred in the sale or maintenance of 912 Harbor Pines, Merritt Island, Fl 32952. Any money remaining from the sale of 912 Harbor Pines Drive, Merritt Island, Florida 32952 after reimbursing my Attorney-in-Fact and the payments made by him on my behalf will ... immediately be paid to me in cleared funds to the bank account of my choosing.
The relocation resulted in disharmony within Former Wife's home and consequently, she sold the Orlando house and moved back to Merritt Island. During this time period, Former Husband accrued arrearages for his court-ordered alimony payments. Upon selling the Orlando house in 2014, Former Wife repaid Former Husband $132,826.93 while an additional $20,000 of the proceeds was placed into Former Wife's lawyer's trust account to bring Former Husband's alimony arrearages current. The parties agreed to this course of action and subsequently entered into a mediated settlement agreement, which provided: "The funds remaining in the trust account of ... counsel for the Former Wife, shall be released to the Former Wife, and the Former Husband waives and relinquishes any and all claims he may have to these funds." The record does not reflect that Former Husband claimed Former Wife owed him any additional *990 monies at that time or that he attempted to set off any additional monies allegedly owed from the $20,000. Thus, the mediated settlement agreement appeared to have resolved repayment of the loan for the Orlando house and Former Husband's alimony arrearages.
In 2017, Former Wife listed her Merritt Island house for sale. Days before the scheduled closing, Former Husband filed a verified complaint against Former Wife for breach of contract, declaratory judgment, and unjust enrichment, alleging that Former Wife did not intend to compensate him from the proceeds of the sale as detailed in the power of attorney. Former Husband contemporaneously filed a notice of lis pendens. Notably, Former Husband recorded the power of attorney immediately prior to filing his complaint.
In response, Former Wife filed an emergency motion to discharge the lis pendens, and the trial court held an evidentiary hearing. While his complaint did not break down the amount sought, at the hearing, Former Husband acknowledged that he loaned Former Wife $152,837.33 in principal for the purchase of the Orlando house and received $132,826.92 from the sale of the Orlando house but claimed that he incurred other costs associated with the loan that amounted to a total outlay of $162,157.30. He sought $20,000 from what he claimed was the original principal of the loan, as well as $9,319.97 in interest and other costs.[1] Former Husband argued that the mediated settlement agreement that brought his $20,000 alimony arrearages current never waived repayment of the $20,000 in principal or the additional costs and interest upon the sale of the Merritt Island house. In total, Former Husband claimed that Former Wife owed him "about $30,000" plus interest on that amount.[2] Former Wife argued that the mediated settlement agreement satisfied her obligation to repay the loan considering Former Husband's alimony arrearages. Thus, she contended that Former Husband sought repayment of the alimony arrearages paid out of the sale proceeds of the Orlando house, which he waived pursuant to the mediated settlement agreement.
Following the hearing, the trial court discharged the lis pendens and found that Former Husband was not entitled to injunctive relief but required Former Wife to keep $36,500 from the sale of the Merritt Island house in escrow until the resolution of Former Husband's claims. In response to the trial court's order, Former Wife moved to dissolve what she alleged was a temporary injunction or alternatively, to require that Former Husband post a bond to support escrowing the sale proceeds. The trial court denied Former Wife's requests, maintaining the restriction on the sale proceeds of her house.
Initially, we decline to rule upon the issue Former Wife spends the majority of her brief arguing-whether Former Husband could place a lien or file a lis pendens on her homestead property. The trial court properly discharged the lis pendens, rendering that issue moot for purposes of our review.
However, we agree with Former Wife that while the trial court found that Former Husband was not entitled to an injunction, the relief fashioned effectively enjoined Former Wife's use and benefit from the sale proceeds of her house while the parties disputed the status of the loan. We find that the trial court erred both in requiring Former Wife to place monies into escrow and in failing to require Former *991 Husband to post a bond. Cf. Rosasco v. Rosasco, 641 So.2d 493, 494-95 (Fla. 1st DCA 1994) (finding error where trial court required former husband to deposit portion of sale proceeds into escrow pending resolution of former wife's claims for payment where former wife could not illustrate entitlement to injunctive relief).
Former Husband's characterization of the $20,000 sought as principal does not make it so. It is undisputed that three years after agreeing to repay his court-ordered alimony arrearages from the sale proceeds of the Orlando house, Former Husband was attempting to not only obtain repayment of the alimony but also interest on that payment. Thus, the majority of the monies the trial court required to be escrowed pertained to that $20,000 alimony payment which was entirely unrelated to the power of attorney.[3] These are not the circumstances contemplated by Van Vorgue v. Rankin, 41 So.3d 849 (Fla. 2010), on which the dissent relies. In Van Vorgue, the parties agreed to escrow funds pending resolution of a suit alleging that a quitclaim deed was not properly witnessed and that a stock assignment was fraudulently induced. Id. at 849-50.
The record is not unclear on this issue. If simple math does not make this obvious, at numerous times, as well as in pleadings, Former Husband's attorney did. For example, at the emergency hearing to dissolve the lis pendens, counsel for Former Husband set out his contention:
THE COURT: Mr. Hannon, does she still owe your client some money?
MR. HANNON: Yes, she does, Your Honor.
THE COURT: How much?
MR. HANNON: At this point, with a baseline of $162,000 that's claimed in the affidavit, the plaintiff is seeking somewhere in the neighborhood of $40,000 to $50,000.
THE COURT: Why is that, if she paid him $152,837.33?
MR. HANNON: She paid us $132,000, Your Honor, respectfully.
THE COURT: Wait a minute. Wait a minute. She paid you the other $20,000, on top of that, for his alimony obligation, right?
MR. HANNON: The other $20,000 was withheld in escrow and never released to my client. Essentially, Your Honor, there's two separate issues here. The one covering the amounts given to the defendant pursuant to the subject Power of Attorney, the other in the context of the divorce case has to do with the alimony payments.
....
THE COURT: All right. And you acknowledge that you owed her-or your client owed her $20,000. Is that right?
MR. HANNON: We do acknowledge that, and moreover, that that is pursuant to the settlement agreement of 2015, by which that amount was agreed to be released.
The parties presented the trial court these issues in the form of an emergency motion to dissolve a lis pendens and subsequent rehearing. The court did a commendable job under the circumstances, and its decision to dissolve the lis pendens was correct. However, the requirement that Former Wife hold monies in escrow pending the outcome of the litigation effectively *992 enjoined her use of the monies and was improper.
REVERSED AND REMANDED.
TORPY, J., concurs.
EISNAUGLE, J., dissents with opinion.

The $9,319.97 sought in interest included interest on the $20,000.

At other times, Former Husband claimed that Former Wife owed him up to $60,000.

Under Former Husband's theory, the mediated settlement agreement to repay his alimony arrearages was meaningless because Former Wife, effectively, was required to repay those arrearages to Former Husband upon sale of the Merritt Island property. Under this theory, Former Wife would be required to institute contempt proceedings to once again recover monies to which she was admittedly owed. Perhaps Former Husband's defense to that action would be that he had already paid those monies.