*93
 
 RAMIREZ, J.
 

 Appellants/plaintiffs Fadia Daneri, Paola Dickinson, Paola Daneri, Consuelo Dickinson, and Jaime Dickinson (collectively, “Daneri”) appeal the trial court’s Final Summary Judgment in favor of appellee BCRE Brickell, LLC with regard to count III.
 
 [1]
 
 We reverse because there are issues of fact that affect whether BCRE adhered to section 718.202, Florida Statutes (2008). The record suggests BCRE may have illegally withheld a portion of Daneri’s deposit because it conditioned return of Daneri’s deposit, a return to which it conceded Dan-eri was entitled, upon its lender’s consent to return of the deposit. The requirement for lender’s consent was imposed by an agreement to which Daneri was not a party. Encumbering return of the first 10% of a buyer’s deposit toward the purchase price of a condominium, through a contract with someone other than the buyer, would violate the statute. We cannot, however, resolve the legal issue of violation of the statute without determining whether Dan-eri “defaulted” under the contract, which the pleadings below suggest is in dispute. Thus, we reverse the summary judgment.
 

 Daneri entered into a contract with BCRE for the sale and purchase of a condominium. The contract required Dan-eri to make a 20% deposit towards the purchase price of the condominium. In the event of a buyer default, Daneri was entitled to 25% of her deposit, and the developer would be entitled to the remaining 75%.
 

 In October 2008, the developer notified Daneri, by letter, that she had defaulted on the agreement. BCRE did not return any of Daneri’s deposit at that time. Instead, BCRE explained in its letter to Daneri that BCRE’s lender needed to eon-sent to the refund before returning the money to Daneri. BCRE advised Daneri’s lawyers that BCRE had received consent from its lender to return 25% of Daneri’s deposit, so long as she executed a release entitled “Termination Agreement.” Dan-eri’s counsel rejected the offer and filed suit against BCRE. The trial court entered summary judgment in Daneri’s favor on counts I and II, which was not appealed. The trial court also reserved jurisdiction to determine entitlement to other relief deemed appropriate.
 

 The day before the hearing regarding Daneri’s other relief, BCRE filed an affidavit that revealed an agreement between the escrow agent, BCRE, and BCRE’s lender. BCRE had entered into an agreement with the construction lender that promised the lender whatever interest BCRE had in all of the construction’s purchase agreements and escrow deposits. The agreement, entitled the “Escrow Ac-knowledgement and Agreement,” was between BCRE, its lender, and the escrow agent. Daneri filed an amended complaint to include a third count to void the agreement for violation of the statute. Daneri argued in count III that the contract should be voided because BCRE violated section 718.202. The trial court entered final summary judgment for BCRE, and this appeal followed.
 

 Summary judgment is proper only if no genuine issue of material fact exists and if the moving party is entitled to a judgment as a matter of law.
 
 Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000). The standard of review for summary judgment is de novo.
 
 Id.
 
 In reviewing a summary judgment, this Court “must consider the evidence con
 
 *94
 
 tained in the record, including any supporting affidavits, in the light most favorable to the non-moving party ... and if the slightest doubt exists, the summary judgment must be reversed.”
 
 Krol v. City of Orlando,
 
 778 So.2d 490, 492 (Fla. 5th DCA 2001).
 

 Resolution of this case requires the Court to interpret section 718.202, which imposes requirements upon developers who take deposits from buyers before substantial completion of the condominium project. When the Court interprets a statute, the Court must follow the plain meaning of the statute in light of the express legislative intent contained in the statute’s language.
 
 See St. Petersburg Bank & Trust Co. v. Hamm,
 
 414 So.2d 1071, 1073 (Fla.1982). When interpreting a statute, we interpret its language and the resulting operation of its terms by reading the statute as a whole to give it meaning in its entirety.
 
 Forsythe v. Longboat Key Erosion Control Dist.,
 
 604 So.2d 452, 455 (Fla.1992). Each section of the statute must be read in light of its interaction with other parts of the statute so that this Court’s interpretation “give[s] full effect to all statutory provisions in harmony with one another.”
 
 Id.
 
 And “the fact that the legislature may not have contemplated a particular situation does not make the statute ambiguous.”
 
 Id.
 
 at 456. Similarly, limitations upon use of money placed in escrow pursuant to an agreement are governed by the terms of the agreement.
 
 Van Vorgue v. Rankin,
 
 41 So.3d 849, 853 (Fla.2010).
 

 In this case, the statute’s purpose in imposing conditions upon use of purchaser deposits, by requiring placing the funds in escrow and limiting release of the funds placed in escrow, is “to protect purchasers under preconstruction condominium contracts from loss of their deposits should the developer fail to perform its obligations.”
 
 First Sarasota Serv. Corp. v. Miller,
 
 450 So.2d 875, 878 (Fla. 2d DCA 1984).
 

 The statute restricts a developer’s use of purchaser deposit funds by requiring those funds to be kept untouched in escrow unless certain conditions are met. As to the first 10% of the purchase price, the statute requires that “the developer shall pay into an escrow account all payments up to 10 percent of the sale price received by the developer from the buyer towards the sale price.” § 718.202(1). The statute then states that “funds shall be released from escrow” only if: a) the buyer terminates the contract; b) the buyer defaults under the contract; or c) the sale closes. § 718.202(l)(a); (b); (d). As to the remainder of the deposit, “all payments which are in excess of the 10 percent of the sale price ... shall be held in a special escrow account” controlled by an escrow agent independent of the developer and cannot be used except as specifically provided in the statute. § 718.202(2). The developer can use this portion of the deposit
 
 only
 
 for “actual construction and development.”
 
 Id.
 
 In addition, the developer’s contract with the buyer must specifically provide that the funds provided in excess of 10 % of the purchase price may be used in actual construction and development, or they cannot be used at all. § 718.202(3). Failure to comply with the statute makes the developer’s contract with the buyer voidable
 
 by the buyer,
 
 which requires return of all monies provided to the developer as a deposit.
 

 Here, all three subsections of 718.202 are at issue, because the purchaser, Dan-eri, provided the developer, BCRE, with a deposit of 20% of the sale price. However, BCRE did not violate subsection (2) because BCRE specifically informed Daneri, in two places in the sales contract (the price page and the signature page), that it
 
 *95
 
 intended to use money in excess of 10% of the purchase price to fund its construction costs, as permitted pursuant to subsection (2). BCRE also used the language required by the statute to inform Daneri of its intentions, as required under subsection (3).
 

 Summary judgment was incorrectly entered, however, because there is an issue of fact regarding whether BCRE’s limitation on the return of the other portion of Daneri’s deposit violated subsection (1), which states “default determinations and refund of deposits shall be governed by the escrow release provisions” contained in section 718.202. The statute’s escrow release provisions provide that the ten
 
 %
 
 in escrow is released when: a) the buyer terminates the contract pursuant to its terms or as allowed under the condominium law; b) the buyer defaults under the contract; or c) the sale closes. § 718.202(l)(a); (b); (d). Here, an issue of fact exists because it is unclear whether the alleged default by Daneri was really a termination of the contract “pursuant to its terms,” or whether it was a default “in the performance of [Daneri’s] obligations under the contract of purchase and sale.”
 
 See
 
 § 718.202(1).
 

 BCRE advised the trial court that Dan-eri had conceded default under the contract by demanding return of 25% of its deposit, but that is an inference we cannot make upon our de novo review of this record. While BCRE contends that Dan-eri conceded it had defaulted, the record only shows that BCRE gave “written notification that it has claimed or will claim” that Daneri defaulted under the agreement. Consequently, we cannot accept BCRE’s contention that Daneri, by filing a lawsuit seeking to void the contract for violation of 718.202(3), conceded it had defaulted under the contract.
 

 Thus, BCRE may have violated section 718.202 because the funds held in escrow were withheld in violation of the statute due to BCRE’s obligations to its lender, rather than pursuant to the purchase contract. The statute requires that “funds shall be released from escrow” under specified conditions, which as relevant here, relate to the contract’s terms regarding pui’chaser default or developer default. If the developer defaulted, it had no right to withhold any of the deposit due back to Daneri pending approval of BCRE’s lender. If Daneri defaulted, then BCRE was entitled to all the deposit, and could, as it claims to have done here, return portions of the deposit subject to the conditions imposed upon Daneri. The pleadings demonstrate this issue was disputed, and its resolution is material to whether the statute was violated, which requires us to reverse the summary judgment in favor of BCRE.
 
 See First Sarasota Serv. Corp.,
 
 450 So.2d at 878 (reversing summary judgment because determining whether a violation of the statute had occurred required “the court to first determine whether the purchasers were in default under their contracts”);
 
 Ric-Rec, Inc. v. Capri Gardens Condo., Inc.,
 
 379 So.2d 407, 408 (Fla. 3d DCA 1980) (reversing summary judgment because the record evidence was “susceptible to conflicting inferences”).
 

 Accordingly, we reverse the trial court’s summary judgment with respect to count III, because BCRE failed to demonstrate beyond dispute that it adhered to the constraints placed on funds in escrow pursuant to section 718.202.
 

 Reversed and remanded as to count III in each of the plaintiffs’ cases.
 

 [1]
 

 . The plaintiffs’ cases are all procedurally and factually identical and have been consolidated on appeal. The units, which were the subject of the five cases in the trial court, differ in price and the corresponding 20% deposit amount.