# Third District Court of Appeal

**State of Florida**

Opinion filed December 28, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1258
Lower Tribunal No. 13-26812
_____

**Lily Alvarez-Mejia,**
Appellant,

vs.

**Bellissimo Properties, LLC and Vista Goebel, LLC,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Antonio Marin, Judge.

Marin Eljaiek & Lopez, P.L., Anthony M. Lopez and Eric J. Strauss, for appellant.

Cohen Law and Danielle A. Cohen, for appellees.

Before SHEPHERD, LAGOA and FERNANDEZ, JJ.

FERNANDEZ, J.

Lily Alvarez-Mejia appeals from the trial court's summary judgment order in favor of appellees Bellissimo Properties, LLC and Vista Goebel, LLC. We reverse the summary judgment because the trial court incorrectly found that there is no genuine issue of material fact as to the value of the property after repair and the cost of repair. The court also improperly weighed evidence and determined credibility when it granted the motion.

On November 2, 2006, EquityLink, Inc. loaned Alvarez $120,000 to purchase residential property. That same day, Alvarez-Mejia executed a mortgage and note granting EquityLink a security interest in the property. On December 8, 2006, EquityLink assigned the mortgage to Bellissimo for $62,667 and to Bonita Properties, LLC for $57,333. Bonita then assigned all of its interest in the mortgage to Vista Goebel, LLC.

On December 22, 2011, a fire damaged the property, and Alvarez-Mejia filed a claim for her losses with the homeowner's insurance carrier, Capitol Preferred Insurance Company, Inc. Capitol issued Alvarez-Mejia two checks totaling $94,162.52: one in the amount of $54,976.43, and the other in the amount of $39,186.09. The payees on both checks included Alvarez-Mejia, Marin, Eljaiek & Lopez, P.L. (the law firm that represents Alvarez-Mejia), Bellissimo, and Bonita.

2

Bellissimo withheld the insurance proceeds pursuant to sections 5 and 11 of the mortgage, which provides that during the repair and restoration period, Bonita and Bellissimo "shall have the right to hold the insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction. . . ." Moreover, section 5 of the mortgage titled "Property Insurance" provides that:

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

Bellissimo maintained that it was not economically feasible to repair the property based on an appraisal of the exterior of the home, which set the home's value at $90,000, and a repair estimate from a licensed contractor for $98,717. Alvarez-Mejia relied on this repair estimate to obtain the $94,162.52 in insurance proceeds. Alvarez-Mejia later provided Bellissimo with a revised estimate for $53,117.

On August 15, 2013, Alvarez-Mejia filed a complaint against Bellissimo and alleged that she was unable to repair the property because Bellissimo failed to distribute the insurance proceeds. In response, Bellissimo filed a motion to dismiss,

3

and Alvarez-Mejia subsequently amended her complaint. On November 11, 2014, Bellissimo filed a motion for summary judgment on all counts in the Amended Complaint, including: (1) Breach of Contract, (2) Breach of Implied Covenant of Good Faith and Fair Dealing, (3) Declaratory Judgment, and (4) Unjust Enrichment. Alvarez-Mejia filed a response in opposition to the motion for summary judgment along with two supplemental affidavits. The trial court granted summary judgment in favor of Bellissimo, and found that it was not economically feasible to repair the property because the cost to repair was greater than the value of the property. Alvarez-Mejia then filed a motion for reconsideration and rehearing. The trial court denied the motion.

The standard of review for summary judgment is de novo. Tropical Glass & Const. Co. v. Gitlin, 13 So. 3d 156, 158 (Fla. 3d DCA 2009). Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). It is the movant's burden to establish that there is no genuine issue of material fact. Calarese v. Weissfisch, 87 So. 3d 1225 (Fla. 3d DCA 2012). On review of a summary judgment, this Court must "consider the evidence contained in the record, including any supporting affidavits, in the light most favorable to the non-moving party . . . and if the slightest doubt exists, the

4

summary judgment must be reversed." Daneri v. BCRE Brickell, LLC, 79 So. 3d 91, 93-94 (Fla. 3d DCA 2012).

We agree with Alvarez-Mejia that the trial court erred when it granted final summary judgment in favor of Bellissimo, as a genuine issue of material fact exists with respect to the value of the property after repairs. Bellissimo argued that it was not economically feasible to repair the property with the insurance proceeds because the initial estimate of $98,717 was greater than the exterior appraisal of the home, valued at $90,000. However, Alvarez-Mejia's affidavit provides that it is economically feasible to repair the property because the value of the property with repairs will be significantly greater than the outstanding balance of the mortgage. The term "economically feasible" is undefined in the mortgage and is subject to different interpretations. In the instant case, summary judgment is precluded because Bellissimo did not provide an estimate of the value of the property after repairs, and therefore did not meet its burden of proof that no genuine issue of material fact exists.

Moreover, a genuine issue of material fact exists as to the cost of repairs to the property. In the motion for summary judgment, the parties relied on two different repair estimates to support their contention. Bellissimo relied on the initial estimate that Alvarez-Mejia signed and relied upon to obtain the insurance proceeds, while Alvarez-Mejia relied on the revised estimate that was significantly

less than the insurance proceeds. Despite a conflict of material evidence, the trial court granted summary judgment in favor of Bellissimo.

It is clear that the trial court placed substantial weight on the initial estimate on the motion for summary judgment and disregarded the revised estimate. However, on a motion for summary judgment, the trial court must not weigh material conflicting evidence or pass upon the credibility of the witness. Hernandez v. United Auto. Ins. Co., 730 So. 2d 344, 345 (Fla. 3d DCA 1999). See Jones v. Stoutenburgh, 91 So. 2d 299, 302 (Fla. 1956) (holding that the trial court should not weigh evidence on the motion for summary judgment and should construe any evidence in controversy in favor of the non-movant). Only a trier of fact may weigh evidence and determine credibility—the court was without authority to weigh the evidentiary value of the conflicting estimates.

Accordingly, we reverse the order of summary judgment and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.

LAGOA, J., concurs.

SHEPHERD, J.

I respectfully dissent.

The question in this case is under what circumstances a lender may choose to apply the proceeds of a homeowner's insurance policy to the debt due under the mortgage rather than to the repair or restoration of a home that has suffered a fire loss. The operative language of the mortgage reads as follows:

> **Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened**....If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to the Borrower.

In other words, a lender is contractually bound by this provision to accede to the use of insurance proceeds received as a result of a covered property loss if two independent conditions are satisfied: (1) restoration and repair of the property is "economically feasible" **and** (2) the Lender's security is not lessened as a result. On summary judgment, it therefore falls to the lender to demonstrate indisputably either that restoration and repair of the property is not economically feasible, **or** that the lender's security will be lessened as a consequence of proceeding with the

repair. I believe the lender met its burden on both of these grounds in this case. In addition, I believe the undisputed fact that the borrower was in default in this case long before the date of loss and has remained so constitutes a separate basis for affirmance.

On the first ground, the phrase "economically feasible" is undefined in the mortgage, and the parties provide no guidance to us as to its meaning. Electronically assisted research of all federal and state case law discloses just one case where a court has attempted to define the phrase. In <u>Vongohren v. Citimortgage, Inc.</u>, JFM-14-3549, 2016 WL 739070, at *4 (D. Md. Feb. 25, 2016), Judge J. Frederick Motz of the United States District Court of Maryland reasoned to the following definition:

> Feasibility is defined as "[t]he possibility that something can be made, done, or achieved, or that it is reasonable; practicability." *Feasibility*, BLACK'S LAW DICTIONARY (10th ed. 2014). Because "economically" modifies "feasible" in the parties' loan agreement, and defining "economically feasible" as simply "economically possible" has no limiting principle, the best interpretation of "economically feasible" is "economically reasonable" or "practicable."

I find Judge Motz' reasoning in this case to be persuasive. While it may be economically possible to repair the property in question, assuming Alvarez-Mejia was willing to advance the remainder of the funds in excess of the insurance proceeds to perform the repair on the property, I believe it is not "economically reasonable" or "practicable" to do so.

8

The following evidence was presented to the trial court on the issue of the economic feasibility of repair: (1) the mortgage showing the original $120,000 debt; (2) an estimate prepared by The Combined Group, dated November 12, 2012, signed by Alvarez-Mejia, of $98,717 to repair the fire damage[1]; (3) an appraisal of the home commissioned by the lender, valuing the property at $90,000 after repairs; [2] (4) an affidavit by Alvarez-Mejia in which she averred, without supporting facts, that "[o]nce repaired, the value of the [p]roperty will be significantly greater than the outstanding balance on the mortgage"; and (5) an affidavit by Alvarez-Mejia's counsel's office manager, attaching an unsigned estimate of repairs alleged to have been prepared by The Combined Group on April 11, 2013, stating the cost of repair to be $53,117.

The majority would have us believe the latter two affidavits together created a genuine issue of material fact barring summary judgment. However, the trial judge correctly found that they were legally insufficient for consideration. Alvarez-Mejia's affidavit was properly excluded from consideration as conclusory opinion evidence. See Fla. R. Civ. Proc. 1.510(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent

---

[1] This estimate was submitted by Alvarez-Mejia to her insurer and netted the disputed $94,162.52 insurance proceeds being held by the lender.

[2] Because the lender was denied access to the interior of the home, this appraisal was conducted from outside the home.

9

to testify to the matters stated therein.")  Her conclusion that after repairs the value of the home will exceed the outstanding balance on the mortgage was an opinion on the ultimate issue to be decided in the case.  See, e.g., Carter v. Cessna Fin. Corp., 498 So. 2d 1319, 1320 (Fla. 4th DCA 1986) ("In short, a party does not create a fact question merely by placing his assertions in affidavit form."); see also Fuentes v. Sandel, Inc., 189 So. 3d 928, 935 (Fla. 3d DCA 2016) (upholding a trial court's exclusion of an affidavit which only contained legal conclusions); Castro v. Brazeau, 873 So. 2d 516, 517 (Fla. 4th DCA 2004) (determining "conclusion of one passenger that [defendant] had to be speeding based upon the crash damage to [plaintiff's] vehicle was not competent evidence because passenger was not qualified as an expert"); compare McNabb v. Taylor Elevator Corp., No. 2D15-4838 (Fla. 2d DCA Aug. 17, 2016) (finding expert's conclusions as to duration of a leak sufficiently supported by observation and testing).

The second affidavit of counsel's office manager and self-described records custodian, attaching a later dated repair estimate alleged to have been prepared by The Combined Group, is even more deficient.  First, the repair estimate was excludable as hearsay, "a statement other than one made by the declarant . . . offered in evidence to prove the truth of the matter asserted," § 90.801(1), Fla. Stat. (2016), because not introduced by The Combined Group's record custodian.  § 90.802(6), Fla. Stat. (2016) (defining a business record as "[a] record . . . of acts . .

10

. made at or near the time . . . by a person with knowledge, if kept in the course of a regularly conducted business and if it was the regular practice of that business activity to make such memorandum, report [or] record.") Additionally, the unsigned repair estimate was excludable for lack of authentication. Nichols v. Preiser, 849 So. 2d 478, 481 (Fla. 2d DCA 2003) ("Simply attaching documents that are not sworn or certified to a motion for summary judgment does not satisfy the procedural requirements of Florida Rule of Civil Procedure 1.510(e)."); Daeda v. Blue Cross & Blue Shield of Fla., 698 So. 2d 617, 618 (Fla. 2d DCA 1997) ("Under our rules of civil procedure . . . only competent evidence may be considered by the court in ruling upon a motion for summary judgment"); see also Freiday v. OneWest Bank, 162 So. 3d 86 (Fla. 4th DCA 2014) (excluding default letter attached to motion for summary judgment but not otherwise authenticated). The second repair estimate allegedly came from the same company which prepared the first estimate which was submitted to the insurance company. A side-by-side comparison of the two estimates reveal only three differences: the contract dates, the amount for repairs, and the absence of Alvarez-Mejia's signature on the later estimate. The details of the work to be performed are identical, and Alvarez-Mejia never provided an explanation as to the reason for the change in the cost to perform the same repairs.

Accordingly, accepting the repair estimate of $98,717 as the only accurate cost of repair and the property value estimated to be $90,000, it is neither "economically reasonable" nor "practicable" to expend $98,717 to obtain a $90,000 benefit in this case. See Vongohren at *5 (finding no genuine issue of material fact to exist where necessary repairs would cost $67,500 and add only $35,000 in value, especially where the borrowers are in default under their loan agreement).

As to the second ground, we only need to acknowledge that the insurance proceeds, when granted by the insurer, become part of the security for the loan. Accordingly, an expenditure for restoration or repair of a property which ends with a property value less than the amount expended constitutes, a fortiori, a "lessening" of the lender's security. Parenthetically, it should be noted that a careful consideration of the language of the second ground in section 5 of the mortgage reveals it is not the post-repair adequacy of the security that is determinative of whether the lender's security will be "lessened" by a repair or restoration, but rather the post-repair value of the security itself. In re Hill at *12 (noting the abiding interest of the lender during the course of loan is not the outstanding balance on the loan at any point in time, but rather "ensuring that the value of its collateral . . . is maintained, if not enhanced").

Finally, in a fashion very similar to the Vongohrens in their case, Alvarez-Mejia, in the case before us, defaulted on her mortgage loan long before the fire loss occurred to property, and there is no evidence in the record that she has brought the loan current. Although not raised by the parties or considered below, I would find this alone is sufficient, as a matter of law, to make repair economically unfeasible in this case. See Vongohren at *4.

For all of these reasons, I would affirm the decision of the trial court.